UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID P LEAVER, MAUREEN GILLEN-BROWN, BRENNA SANTOS, JAMES RINGUETTE, MARIANNE BARBOZA, ERIKA SHEEHAN, CAROL MCGRATH, MARY KENNEDY TAYLOR, <br><br>    Plaintiffs, <br><br>    v. <br><br>LIFE CARE CENTERS OF AMERICA, INC., <br><br>    Defendant. | Civil Action No. 23-10901-MJJ |

## MEMORANDUM OF DECISION

January 19, 2024

JOUN, D.J.

On April 26, 2023, David P. Leaver filed a complaint against Life Care Centers of America, Inc. ("Life Care"), his former employer, and filed an amended complaint on July 12, 2023, to include several additional claimants, all former employees of Life Care who were terminated for refusing to receive a COVID-19 vaccine after their religious exemption applications were denied (collectively "Plaintiffs"). [Doc. Nos. 1, 4]. The amended complaint alleges Assault, violations of Equal Protection and Due Process under the Constitution and the Massachusetts Declaration of Rights, and violations of Title VII[1] and "Chapter 151."[2] Life Care

---

[1] Codified at 42 U.S.C. § 2000e–2(a).

[2] Presumably, Plaintiffs intended to refer to M.G.L. c. 151B ("Chapter 151B"). M.G.L. c. 151 concerns minimum wage laws.

moved to dismiss the amended complaint entirely for failure to state a claim. [Doc. No. 14]. For the reasons below, that motion is GRANTED in part and DENIED in part. All claims except the employment discrimination claims are dismissed, and those claims are dismissed as to all plaintiffs except Mr. Leaver and Maureen Gillen-Brown.

I.   BACKGROUND

The following facts, taken from the amended complaint, are accepted as true. *See Rosenberg v. City of Everett*, 328 F.3d 12, 15 (1st Cir. 2003). All plausible inferences are made in favor of the non-moving party. *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 535 (1st Cir. 2023). I only recount the facts necessary to this decision.[3] All Plaintiffs were employed by Life Care prior to October 10, 2021. [Doc No. 4, at ¶¶ 1–9]. Life Care operates nursing homes in Massachusetts. [*Id.* at ¶ 10]. At the outset of the COVID-19 pandemic, Life Care required its employees to wear masks and other personal protection items, "stating the reason that doing so was the best way to minimize the spread of such disease." [*Id.* at ¶ 23]. In early August 2021, Life Care announced a "Mandatory Vaccine Policy" ("the Mandate") which required all "employees to have been injected by the COVID-19 vaccine [sic] or to have at least commenced a two (2) dose regimen by October 10, 2021." [*Id.* at ¶ 26]. The Mandate had exemptions, including, at least by October 1, 2021, a religious exemption for sincerely held religious beliefs. [*Id.* at ¶ 27]. Plaintiffs allege the Mandate was "based on the Massachusetts Department of Public Health (hereinafter, "DPH") Emergency Order No. 2021-4 dated August 4, 2021." [*Id.* at ¶ 106].

Two Plaintiffs, Mr. Leaver and Ms. Gillen-Brown, allege that their sincerely held religious beliefs prevent them from being vaccinated. [*Id.* at ¶¶ 29–30; 53]. Another, Erika K.

---

[3] In particular, the extensive briefing on the effectiveness of the vaccine is not relevant to this motion.

Sheehan, alleges that she "is a Christian, who believes in the sanctity of life." [*Id.* at ¶ 65]. All Plaintiffs applied for religious exemptions, which were denied, during the period between June 2021 and September 2021. [*Id.* at ¶¶ 34–35; 54–55; 59–60; 73–74; 77–78; 81–82; 86–87; 90–91; 94–95]. All exemptions were denied on the grounds that Life Care could not make reasonable accommodations. [*Id.*]. Plaintiffs allege that there was a policy of denying all requests for religious exemptions. [*Id.* at ¶¶ 42; 56; 84; 90; 100]. Plaintiffs also allege that, even before their exemptions were denied, some of their positions were briefly publicly posted on websites for jobseekers as open, then removed. [*Id.* at ¶¶ 31–33].

After their requests for religious exemptions were denied, all Plaintiffs presumably refused to be vaccinated. Plaintiffs allege that they offered to use personal protective equipment and be periodically tested, [*id.* at ¶ 51], but that Life Care "degradat[ed] [sic] face masks and periodic testing by labeling them as 'inferior' and [an] unacceptable accommodation" despite "laud[ing] their effectiveness" historically, [*id.* at ¶¶ 108–09]. As a result, all Plaintiffs were terminated either on October 9 or October 10, 2021. [*Id.* at ¶¶ 37–38; 58; 62–64; 76; 80; 85; 89; 93; 97–98]. Plaintiffs allege that from the August 2021 issuance of the mandate until October 2021, they were allowed to work unvaccinated. [*Id.* at ¶ 41].

## II. STANDARD OF REVIEW

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads

3

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## III.  DISCUSSION

### A.  Assault

Plaintiffs do not defend their Assault claim in their opposition to the motion to dismiss. Assuming that claim has not been waived, "an assault is defined as either an attempt to use physical force on another, or as a threat of use of physical force." *Commonwealth v. Gorassi*, 432 Mass. 244, 248 (2000).[4] The amended complaint contains no allegations that physical force was attempted or threatened. *See also McEntee, et al. v. Beth Israel Lahey Health, Inc.*, 2023 WL 4907617, at *2–*3 (D. Mass. 2023) (threatening termination is not an assault). Thus, Plaintiffs' Assault claims are dismissed.

### B.  Federal Constitutional Claims[5]

Life Care argues that Plaintiffs do not adequately allege that Life Care is a state actor; thus, Life Care cannot be held liable for violations of the Constitution. *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 543 (1st Cir. 2021) (plaintiffs suing under Section 1983 must establish state action). Plaintiffs concede Life Care is a private actor. To show that a private actor

---

[4] Because the only difference between civil and criminal assault in Massachusetts is the heightened scienter requirement in the criminal context, lower courts analyzing civil assault claims regularly reference criminal cases for guidance. *McEntee v. Beth Israel Lahey Health, Inc.*, __ F. Supp. 3d __, 2023 WL 4907617, at *2 n. 3 (D. Mass. 2023).

[5] Life Care argues that Plaintiffs failed to cite 42 U.S.C. § 1983 as the cause of action for their federal constitutional claims. Indeed, Plaintiffs cite no cause of action. While Plaintiffs erroneously cited Section 1983 as the source of federal subject matter jurisdiction (that is 28 U.S.C. § 1331), they did cite the statute. Because these claims are dismissed on the merits and this is not a jurisdictional defect, I will not dismiss the claims on technical grounds.

acts as a state actor, a plaintiff must adequately allege that the proposed violation (here, refusing to permit religious exemptions) is "fairly attributable to the state." *Id.* Only in rare circumstances are private parties viewed as state actors. *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005). The First Circuit has held that there are three general scenarios when private actors may be treated as state actors:

> [When it] assumes a public function which, by tradition, is exclusively reserved to the state . . . if its conduct is coerced or significantly encouraged by the state . . . [or] if it and the state have entered into so symbiotic a relationship that they have become joint participants in the challenged conduct.

*Cruz-Arce*, 19 F.4th at 544. Plaintiffs have not adequately alleged state action. In the analysis below, I do not consider the extensive new allegations Plaintiffs raise in their opposition to the motion to dismiss. Such allegations must be pleaded in their complaint, or Plaintiffs must move to amend their complaint. *Willitts v. Life Ins. Co. of N. America*, No. 18-cv-11908, 2021 WL 735784, at *4 (D. Mass. Feb. 25, 2021) (collecting cases).[6]

Nursing homes have not traditionally been the "exclusive" responsibility of the state. *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982). Therefore, the "public function" test is not met here. As to the "coercion" test, Plaintiffs claim that "Defendant's Covid-19 Policy was actually based on the Massachusetts Department of Public Health (hereinafter, "DPH") Emergency Order No. 2021-4, 2021." [Doc. No. 4, at ¶ 106]. Basing a private policy on a public one does not transform it into state action where there is no allegation of coercion. *Cf. McEntee*, 2023 WL 4907617, at * 4. Even if I were to assume that the Mandate was compelled by the Massachusetts order, Plaintiffs' theory would still fail because the challenged conduct is *not* the Mandate, but Life Care's rejection of religious exemptions. "The state compulsion test requires more than the

---

[6] Even if such allegations were well pled, the arguments advanced by Plaintiffs in their opposition have been rejected by other Courts in this District. *McEntee*, 2023 WL 4907617, at *3–*4.

taking of action against a backdrop of applicable state regulations." *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011). Plaintiffs have not alleged any state conduct that coerced Life Care into rejecting religious exemptions. Finally, to the "joint participants" test, there is no allegation of any communication, apart from the order, between Life Care and Massachusetts, let alone "joint participation," in the amended complaint. Therefore, there is no state action and Life Care cannot be held liable for violations of the Constitution.[7]

Plaintiffs suggest that because the state action doctrine is "necessarily fact based," *Lugar v. Edmonson Oil Co. Inc.* 457 U.S. 922, 937 (1982), it is inappropriate to decide at a motion to dismiss. Inadequate allegations of state action are regularly handled at the motion to dismiss stage. *See generally Cruz-Arce*, 19 F.4th 538 (1st Cir. 2021); *Grapentine v. Pawtucket Credit Union*, 755 F.3d 29 (1st Cir. 2014); *Mead v. Indep. Ass'n*, 684 F.3d 226 (1st Cir. 2012); *Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto*, 522 F.3d 1 (1st Cir. 2008); *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1 (1st Cir. 2005); *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45 (1st Cir. 2000); *Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de P.R.*, 84 F.3d 487 (1st Cir. 1996). Furthermore, Plaintiffs are not entitled to discovery on facts they did not allege in their complaint. Because no state action is alleged, there can be no constitutional claim, and Plaintiffs' claims based on Equal Protection and Due Process are dismissed.

C.  **Massachusetts Declaration of Rights**

Plaintiffs claim their rights under the Massachusetts Declaration of Rights to be free "from the invasion of bodily integrity and . . . unwanted medical intervention" were violated.

---

[7] Plaintiffs also spend a good part of their opposition arguing that the federal government mandated these actions. Section 1983 does not apply to federal actors and cannot supply a right of action in this case even if the state action requirement is otherwise met. *See McEntee*, 2023 WL 4907617, at *3 n. 6.

[Doc. No. 4, at ¶ 120].[8] Unlike Section 1983, the MCRA does not have a state action requirement. *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822 (1985). However, in addition to proving that a right exists and was violated, to state a claim under the MCRA the violation must have occurred via "threats, intimidation, or coercion." *Barron v. Kolenda*, 491 Mass. 408, 423 (2023). Dismissal or the threat of dismissal from at-will employment does not meet that standard. *Nolan v. CN8*, 656 F.3d 71, 77 (1st Cir. 2011). Employment in Massachusetts is presumed to be at-will. *Meehan v. Med. Inf. Tech., Inc.*, 488 Mass. 730, 732 (2021). Plaintiffs make no argument that they were for-cause employees or had other protections. *Cf. Nolan*, 656 F.3d at 79–80. They allege no relevant actions by Life Care other than their termination. As such, Plaintiffs' claims based on the Massachusetts Declaration of Rights are dismissed.

### D.  Employment Discrimination

To prevail on a Title VII religious discrimination claim, a plaintiff must make a prima facie case of discrimination, which requires them to show "a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023) (citation omitted). Chapter 151B claims operate under a standard that is indistinguishable from Title VII for the purposes of this motion, *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 137 (1st Cir. 2004) (to show a prima facie Chapter 151B case, a plaintiff must show "the employer required her to violate a religious practice required by her sincerely held belief"). Under both statutes, after a plaintiff establishes a prima facie case, the burden then shifts to the defendant to show that it offered a reasonable accommodation, or that a reasonable accommodation was not possible. *Lowe*, 68 F.4th at 719;

---

[8] The Declaration does not create a self-executing cause of action—claims are brought via the Massachusetts Civil Rights Act ("MCRA"). M.G.L. c. 12, § 11i. MCRA was not cited by Plaintiffs, and Plaintiffs fail to defend this claim. Because the claims fail on the merits, there is no need to dismiss them on technical, non-jurisdictional grounds.

*Cloutier*, 390 F.3d at 137. Here, Life Care has not raised the affirmative defense of undue hardship. Therefore, I may not consider undue hardship in ruling on this motion. *Cf. Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 650 (1st Cir. 2000) (making a similar determination in the ADA context).

Life Care's sole argument in support of dismissing Plaintiffs' employment discrimination claims is that Plaintiffs have failed to go beyond conclusory allegations of violations of either Title VII or Chapter 151B. Here, Plaintiffs' allegations in the "counts" section of the amended complaint merely restate the legal elements of the claims. *See, e.g.*, [Doc. No. 4, at ¶ 124] ("At all relevant times, Plaintiffs were engaged in protected activity under M.G.L. c. 151 [sic] and Title VII, upon which they suffered adverse employment action connected to such protected activity."). A plaintiff cannot meet the 12(b)(6) standard by simply restating the legal elements of a claim. *Iqbal*, 556 U.S. at 679. However, making all plausible inferences in favor of the non-moving party, the amended complaint adequately alleges the elements of a Title VII religious discrimination claim, at least as to Mr. Leaver and Ms. Gillen-Brown.

Although courts will not generally inquire, at least at the motion to dismiss stage, into the sincerity of a sufficiently pleaded religious belief, the pleadings must go beyond a conclusory assertion that the required conduct violated a plaintiff's religion. *See, e.g.*, *Griffin v. Mass. Dep't of Revenue*, public, No. 22-cv-11991, 2023 WL 4685942, at *6 (D. Mass. July 20, 2023) (citing *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981)); *see also Thornton v. Ipsen Biopharmaceuticals, Inc.*, No. 23-cv-11171, 2023 WL 7116739, at *4 (D. Mass. Oct. 26, 2023). Here, making all plausible inferences in favor of the non-moving party, a bona fide religious belief cannot be inferred from the plaintiffs who merely applied for religious exemptions. Nor can the connection between Ms. Sheehan's belief in the "sanctity of life" and

her refusal to take the vaccine be inferred from the complaint. In contrast, Ms. Gillen-Brown has indicated that, due to her religious beliefs, she has never taken vaccines in her adult life, and Mr. Leaver alleged his religious beliefs prevented him from taking vaccines generally. Those allegations meet the 12(b)(6) pleading standards. The amended complaint also plausibly alleges that religious exemptions were never granted and that there was never any serious determination by Life Center as to whether having unvaccinated employees would cause it undue hardship. Thus, Mr. Leaver and Ms. Gillen-Brown have made a plausible allegation their religious beliefs were the reason for the adverse actions. I cannot credit, on a motion to dismiss, Life Care's contention that these exemptions were denied on a case-by-case basis because that contention conflicts with the allegations in the amended complaint. Therefore, a prima facie religious discrimination claim has been alleged. *Cf. Lowe*, 68 F.4th at 719 (employees with specific religious beliefs concerning the vaccine who were terminated for refusing to receive vaccinations on religious grounds stated a prima facie case under Title VII). The motion to dismiss the employment discrimination claims is granted except as to Mr. Leaver and Ms. Gillen-Brown.

## IV. CONCLUSION

For the reasons above, the Motion to Dismiss is <u>GRANTED</u> in part and <u>DENIED</u> in part. All claims other than the employment discrimination claims are dismissed, and those claims are dismissed as to all plaintiffs except Mr. Leaver and Maureen Gillen-Brown.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge